Filed 2/23/26  P. v. Ureno CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064374 |
| v. | (Super. Ct. No. 22NF1116) |
| ERIK MEJIA URENO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson and Terri K. Flynn-Peister, Judges. Affirmed.

Heather E. Shallenberger for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

Erik Ureno appeals from the judgment entered after he was convicted of two counts of assault with a deadly weapon. (Penal Code § 245 subd. (a)(1).)[1] On appeal, Ureno contends the trial court abused its discretion by denying his motion for mental health diversion. He argues the evidence does not support the court's finding he was unsuitable for diversion because he posed an unreasonable risk of danger to public safety. We find no abuse of discretion and affirm.

## BACKGROUND[2]

### I.

#### THE CHARGED OFFENSES

While an individual was on a morning walk, Ureno approached him from behind, said an expletive, stabbed him twice in the back, and then ran away. An officer who responded to the stabbing used a chest seal on the individual because he was having trouble breathing. The individual was transported to the hospital, where he underwent surgery.

Three months later, a different person was walking home from work when Ureno ran up to him. Ureno was holding a knife in his hand and was trying to conceal it behind his leg. Ureno thrust the knife at the person twice, and the person asked him what he was doing. Ureno did not respond. Ureno then thrust the knife towards the person again and stabbed him in the lower chest, upper abdomen area. Ureno ran away. The person was taken to the hospital, where he underwent surgery.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The People charged Ureno with two counts of attempted murder (§§664, subd. (a), 187, subd. (a)) and two counts of assault with a deadly weapon (§245, subd. (a)(1)).

## II.

### URENO'S MOTION FOR MENTAL HEALTH DIVERSION

In 2023, Ureno filed a motion for mental health diversion under section 1001.36, outlining how he satisfied both the statute's eligibility and suitability provisions. He supported his motion with a report from Dr. Lisa Grajewski, a licensed psychologist. The report explained Ureno had a history of mental illness, including diagnoses identified as mental health disorders in the Diagnostic and Statistical Manual of Mental Disorders.

Ureno, who was 30 years old at the time he was first interviewed by Dr. Grajewski, reported he began experiencing symptoms of mental illness at age 14 and additional symptoms at age 22. Ureno's medical records indicated he began receiving medication to treat his mental health issues when he was 26 years old. During previous incarcerations, Ureno was placed in mental health housing and was compliant with treatment and medication. Ureno's treatment and medication, however, did not relieve all his symptoms. During his current incarceration, Ureno was diagnosed with additional mental health disorders revealing new and active symptoms.

With respect to drug use, Ureno reported he smoked marijuana between the ages of 14 and 25 and then began using methamphetamine. Ureno also used heroin in the past and, at the time he was interviewed by Dr. Grajewski, was taking medication to help with his opiate withdrawal.

In her report, Dr. Grajewski opined that Ureno's mental health disorders played a significant role in the commission of the charged offenses. Ureno was allegedly experiencing symptoms due to his disorder and was

3

under the influence of methamphetamine during both offenses. Ureno had little memory of the offenses and recounted that voices told him to stab someone "in order to be 'respected' and avoid hell." Dr. Grajewski further stated Ureno had no rational motive for the offenses, and instead, they were related to his disorder.

Dr. Grajewski determined Ureno's symptoms would respond to mental health treatment. Specifically, Ureno's disorder could be addressed through medication and psychotherapy. Additionally, Ureno would benefit from a "dual diagnosis program." Dr. Grajewski recommended a program that provided "psychoeducation, medication, protocol support, scheduled support for [Ureno's] substance abuse, and training designed to improve negative cognitive beliefs associated with [his mental illness]." Dr. Grajewski also recommended treatment for Ureno's substance use disorder. Finally, Dr. Grajewski recommended that Ureno be enrolled in an intensive outpatient program to treat his mental illness and substance abuse disorder.

Dr. Grajewski concluded Ureno did not pose an unreasonable risk of danger to public safety because there was no indication Ureno was violent as an adolescent or a child, where violent behavior typically begins. Moreover, Ureno had no history of injuring others while in school or during his prior or current incarcerations. Dr. Grajewski noted Ureno did not present as irritable, aggressive, or threatening to her during their sessions. Finally, Dr. Grajewski attributed both Ureno's past conviction for sexual assault and current charged offenses to Ureno's mental health disorders and related symptomology.

4

### III.

#### THE PEOPLE'S OPPOSITION

The prosecutor urged the trial court to deny Ureno's motion, asserting he was unsuitable for diversion based on the violent circumstances of his offenses. The prosecutor noted Ureno committed "unprovoked attack[s] on [ ] defenseless victim[s]." The prosecutor also cited Ureno's previous criminal history, which spanned six years and included a sex crime and multiple assaults using a knife. The prosecutor argued Ureno "would be extremely likely to commit similar crimes" to those charged, because his utilization of a knife in various violent cases "displayed [his] propensity for violence." The prosecutor also maintained Ureno's violence had "escalated over time" and he had now "stabbed two strangers without provocation."

### IV.

#### THE TRIAL COURT'S RULING

At the hearing on the motion for mental health diversion, Ureno's counsel added that Ureno had been evaluated by medical professionals who had a treatment plan in place. Instead of the outpatient treatment Dr. Grajewski recommended, the new plan was for Ureno to enroll in an inpatient residential program followed by an outpatient program.

The trial court denied Ureno's motion for diversion. The court found Ureno met the eligibility requirements for diversion under section 1001.36, subdivision (b)(1),(2), but was not suitable for diversion because he posed an unreasonable risk of danger to public safety. Specifically, the court concluded Ureno would pose an unreasonable risk of committing a super strike if treated at an inpatient program.

The trial court acknowledged Dr. Grajewski's opinion that Ureno did not "have a violent nature", but determined the record showed Ureno's

"severe amphetamine, methamphetamine, and opioid disorders coupled with his schizoaffective disorder . . . manifest[ed] its way in a very violent manner." The court noted the current offenses included Ureno stabbing two different "random individuals." It also noted he had a history of violent offenses, namely, an assault charge and a carjacking offense. Additionally, Ureno committed two misdemeanors after the currently charged allegations. Like the charged offenses, both incidents involved his use of a knife.

The trial court commented the proposed treatment plan seemed inadequate under the circumstances stating: "I have no plan or program in front of me . . . to let me know when he's back on drugs, when he's off his medications, when he's left an in-patient facility. And without that, I don't know how I'm going to stop him from stabbing somebody."

The trial court recognized Ureno "fit the purpose of" section 1001.36, which was created to "keep individuals with mental illness from, essentially, being a revolving door in the criminal justice [system]." However, based on the facts of the current offenses and Ureno's background, the court found Ureno was a "huge danger to the community." The court commented it would have considered "some other treatment program" wherein there was no risk Ureno could walk out of treatment.

V.

JUDGMENT

Following a trial, a jury found Ureno not guilty of attempted murder (§§664, subd. (a), 187, subd. (a)), and guilty of two counts of assault with a deadly weapon (§245, subd. (a)(1)). Ureno timely appealed.

6

DISCUSSION

I.

STATUTORY FRAMEWORK

In 2018, the Legislature enacted sections 1001.35 and 1001.36, creating a program of pretrial diversion intended for defendants with certain mental health disorders. (*People v. Frahs* (2022) 9 Cal.5th 618, 624.) Diversion gives trial courts discretion to suspend criminal proceedings and can lead to potential dismissal of charges upon a defendant's successful completion of a mental health treatment program. (*Id.* at p. 626.) The mental health diversion statutes are to be applied "as broadly as possible." (*Id.* at p. 632.)

The purpose of the mental health diversion program is to: (1) "increase[ ] diversion of individuals with mental disorders to mitigate . . . reentry into the criminal justice system while protecting public safety"; (2) allow "local discretion and flexibility for counties in the development and implementation of diversion . . . across a continuum of care settings"; and (3) "provid[e] diversion that meets the . . . needs of individuals with mental health disorders." (§ 1001.35.)

In 2023, the Legislature amended section 1001.36, redefining the criteria set forth in subdivision (b)(1) and (b)(2) as "eligibility" requirements, and the criteria set forth in subdivision (c)(1) through (c)(4) as "suitability" requirements. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) Under the amended section, a court may, in its discretion, grant pretrial diversion if the defendant satisfies the eligibility requirements under subdivision (b) and the court determines that the defendant is suitable for diversion under subdivision (c). (§ 1001.36, subd. (a).)

7

*A. Eligibility*

A defendant is eligible for diversion if: (1) "[t]he defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" and (2) "[t]he defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1), (2).) The court must assume that the defendant's mental disorder was a significant factor in the commission of the charged offense, "unless there is clear and convincing evidence that it was not a motivating factor, casual factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, subd. (b)(2).)

*B. Suitability*

If a "defendant satisfies the eligibility requirements . . . in subdivision (b)," the court then must determine "whether the defendant is suitable for pretrial diversion." (§ 1001.36, subds. (a), (c).) A defendant is suitable for pretrial diversion if: (1) according to a "qualified mental health expert," the "defendant's . . . mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment"; (2) "[t]he defendant consents to diversion and waives the . . . right to a speedy trial"; (3) "[t]he defendant agrees to comply with treatment as a condition of diversion"; and (4) "[t]he defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community." (*Id.,* subd. (c)(1)–(4).)

"[U]nreasonable risk of danger to public safety" is defined by section 1170.18 subdivision (c), and it requires the court to find the defendant is likely to commit a super strike as defined by section 667, subdivision (e)(2)(C)(iv). (§§ 1001.36, subd. (c)(4); see also *People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*).) Section 667 lists a series of qualifying super

strikes, including "any homicide offense . . . [and] any attempted homicide offense." (See § 667, subd. (e)(2)(C)(iv)(IV).)

In determining whether a defendant poses an unreasonable risk of danger to public safety if treated within the community, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

*C. Residual discretion*

The trial court retains "'residual' discretion" to deny diversion even where the defendant makes a prima facie showing that he or she meets all statutory requirements. (*Sarmiento, supra*, 98 Cal.App.5th at p. 892.) This discretion must be exercised ""'consistent with the principles and purpose of the governing law.'"" (*Ibid.*) "That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Id.* at pp. 892–893.)

II.

STANDARD OF REVIEW

We review a trial court's denial of a motion for mental health diversion for abuse of discretion. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 848.) An abuse of discretion occurs when a court "makes an arbitrary or capricious decision by [either] applying the wrong legal standard" or "bas[ing]

9

its decision on . . . factual findings . . . not supported by substantial evidence." (*Moine, supra,* 62 Cal.App.5th 440, 449.)

### III.

### ANALYSIS

There is no dispute about the trial court's decision that Ureno met the eligibility requirements for pretrial diversion and most of the suitability requirements. The only issue on appeal is whether the court abused its discretion in finding Ureno unsuitable for diversion because he posed an unreasonable risk of danger to public safety if treated in the community. (See §1001.36, subd. (c)(4).) Ureno contends the court abused its discretion because granting him diversion would have made it so he "would not pose a danger to society." Ureno's argument is misplaced.

As an initial matter, we address Ureno's argument that denying him diversion increases "the danger to the public in the long run" because when he completes his nine-year prison term, he will be released with "his severe mental health disorder unaddressed and fully intact." However, the question in front of the trial court was not whether he would be a danger to society without diversion, but whether he would pose an unreasonable risk of danger during treatment. (See §1001.36, subd. (c)(4) ["The defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community"].) As will be discussed in more detail below, the record reflects there was ample evidence for the court to conclude he would.

A. *Ureno's History of Violence and Criminal History*

Ureno's history of violent attacks on strangers supports the trial court's conclusion Ureno posed an unreasonable risk of danger to public safety. On two different days, Ureno stabbed individuals whom he did not know, nor had any altercation or conversation with. One victim was stabbed

10

twice in the back, and another in the chest. Both victims were taken to the hospital and required surgery. Not only do surprise violent attacks on unsuspecting citizens pose a significant threat to public safety, but Ureno's weapon of choice, a knife, can cause victims to suffer life-threatening injuries or death.

Additionally, the two misdemeanors Ureno committed shortly after committing the charged offenses further support the trial court's ruling. Unprovoked, Ureno approached strangers with a knife. On one occasion, Ureno entered a store and began screaming at an employee. Ureno challenged the employee to a fight and told the employee he would kill him. He then told the employee to go out to the parking lot, where he would stab the employee. On another occasion, Ureno approached an unhoused man who was sleeping in a park and told him he had to leave the park. Ureno then attempted several times to stab the unhoused man with a knife. Like in the charged offenses, Ureno's actions could have caused the victims to suffer life-threatening injuries or death.

B. *Dr. Grajewski's Opinion*

Although Dr. Grajewski opined Ureno would not pose an unreasonable risk of danger to society, the trial court did not abuse its discretion in concluding otherwise based, in part, on foundational concerns with her opinion. It is unclear from the record whether Dr. Grajewski reviewed Ureno's full criminal history when she determined Ureno did not have a "violent nature." In fact, it does not appear Dr. Grajewski considered many of Ureno's violent crimes, including a carjacking and two assaults involving a knife that occurred after the charged offenses, in her analysis of whether he poses an unreasonable risk of danger to public safety. Moreover, Dr. Grajewski acknowledged Ureno's past treatment, including medication,

did not relieve all his symptoms. Based on these foundational problems, the court reasonably rejected Dr. Grajewki's opinion that Ureno was neither violent nor posed an unreasonable risk of danger to society. (See, e.g., *People v. Brown* (2024) 101 Cal.App.5th 113, 124 [doctor's opinion defendant did not pose a significant risk to public safety did not warrant overturning a contrary dangerousness determination supported by other evidence]; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1086 [appellate court could not reweigh evidence to overturn trial court's determination that defendant failed to establish his eligibility for diversion].)

C. *Treatment Plan*

In support of its decision that Ureno posed an unreasonable risk of danger to society, the trial court determined it was unsatisfied with Ureno's proposed treatment plan. Specifically, the court was concerned Ureno would "walk away" from inpatient treatment, "stab somebody" and commit a super strike. This conclusion is supported by the record. On multiple occasions, Ureno violently attacked strangers without provocation. According to Dr. Grajewski, part of the reason Ureno attacked those strangers was because of his mental health disorders and how they manifest through his symptoms. The record shows past medication has been ineffective in preventing all his symptoms. Consequently, the court reasonably concluded Ureno's proposed plan, receiving pharmacological and psychotherapy in an inpatient treatment facility, would be insufficient to alleviate the unreasonable risk of danger to society.[3] (See § 1001.36, subd. (f)(1)(A).)

---

[3] The trial court also explained it had "no plan or program in front of [it]" to let it know when Ureno was back on drugs, off his medication, or left an in-patient facility. "[T]o the extent the court in this case relied on a lack of ability to monitor a person's activity and progress while participating in diversion as a basis for denial of [Ureno]'s motion, it did so in reliance on

12

We reject Ureno's argument that he should have been granted diversion because he has "never been offered" psychotherapy, and with that therapy, he would no longer pose an unreasonable risk of danger to society. Dr. Grajewski opined Ureno would respond to mental health treatment and the prosecution did not contend otherwise. However, this factor is only the first criterion Ureno had to meet to be suitable for diversion. (See §1001.36, subd. (c)(1).) As discussed above, the trial court determined Ureno was unsuitable for diversion because he posed an unreasonable risk of danger to society if treated in the community and thus did not meet the fourth criterion under section 1001.36, subdivision (c). (See §1001.36, subd. (c) ["A defendant is suitable for pretrial diversion if *all* of the following criteria are met"] (italics added).) As previously discussed, Ureno's charged offenses and criminal history indicate he was extremely violent. Moreover, his past medication treatment did not stop all symptoms of Ureno's mental illness. Consequently, even if Ureno were to receive and respond to psychotherapy, the court was justified in deciding the risk of danger to society Ureno posed was nevertheless unreasonable.

---

an incorrect statement of the law." (*People v. Cabalar* (2025) 117Cal.App.5th 41, 58–59 (*Cabalar*).) "The provider of the mental health treatment program in which the defendant has been placed shall provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment." (§1001.36, subd. (f)(1)(B).) "The statutory scheme leaves it to the trial court to use its discretion to establish, with input from the parties, the particularities of the regular reporting, which may include, for example, the required frequency, the necessary level of detail, and/or circumstances triggering a need for immediate notice to the court." (*Cabalar* at p. 58, fn. 7.) In any event, because substantial evidence supports the court's conclusion Ureno posed an unreasonable risk of danger, any error was harmless.

D. *Conclusion*

As Ureno points out, one of the stated purposes of the mental health diversion statute is to promote, "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§ 1001.35, subd. (a).) However, as a matter of policy, the Legislature has struck what it believes is "the proper balance between protecting public safety and mitigating the entry and reentry into the criminal justice system of individuals with mental disorders." (*Moore v. Superior Court* (2020) 58 Cal.App.5th 561, 581.) Regarding public safety, the role left for the trial court is to review the evidence in each case and exercise its discretion to determine which side of the legislatively drawn line a defendant falls—reasonable risk or unreasonable risk. (§ 1001.36, subds. (a) & (c)(4).)

Here, the trial court expressed Ureno "seemed to fit the purpose" of section 1001.36. But, based on the circumstances of the charged offenses, Ureno's other offenses, and the proposed treatment program, the court reasonably determined the risk of danger Ureno posed to the public would be unreasonable were he to be treated in the community. (§§ 1001.36, subd. (c)(4); 1170.18, subd. (c).) As a result, the court properly exercised its discretion in denying Ureno's petition for mental health diversion. (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)

14

## DISPOSITION

The judgment is affirmed.

DELANEY, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

SCOTT, J.